Exhibit F

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

BRETT L. MESSINGER
PARTNER
DIRECT DIAL: +1 215 979 1508
PERSONAL FAX: +1 215 689 4903
*E-MAIL:* BLMessinger@duanemorris.com

*www.duanemorris.com*

January 14, 2026

VIA FEDEX

Peter A. Matthews
7526 W. 79th Drive
Arvada, CO 80003

Re:     **Loan Modification Agreement**

Dear Mr. Matthews:

This office is national litigation counsel to Freedom Mortgage Corporation ("Freedom Mortgage"). In or around September 2021, Freedom Mortgage offered you a Loan Modification Agreement, in a typical form as approved by Federal National Mortgage Association ("Fannie Mae"). On December 7, 2021, you signed and returned an altered Loan Modification Agreement, without notifying Freedom Mortgage that you altered the proposed agreement, by adding the following language:

> Lender will immediately pay Borrower any unpaid outstanding debt regardless of status or rejection prior to this agreement. Due to Lender's egregious record of past errors and transgressions against Borrower, all errors, mistakes or negligence ("Grievances") by Lender will be corrected to the satisfaction of Borrower within 10 business days from written notice by Borrower. Failure to correct these within this time frame will result in $200 per hour charge for Borrower's time spent working with Lender to correct. If the Grievances are still not corrected within 20 business days after the initial 10 business days, this Agreement will be null and void with no penalty or negative reporting or credit impact to Borrower.

Freedom Mortgage signed the Loan Modification without realizing the language as being altered.

Unfortunately, we must request that you re-sign the Loan Modification Agreement in the form originally sent to you. Please be reminded that when you signed the Loan Modification Agreement, as altered, you also signed a Correction Agreement, which allows for Freedom Mortgage to demand that it be re-signed in the form if the Loan Modification Agreement misstates the terms and conditions of the loan. A copy of the Correction Agreement is attached. To be clear, Freedom Mortgage will honor the terms of the Loan Modification Agreement in the form originally offered you, so long as you: (i) sign the enclosed Loan Modification Agreement

DUANE MORRIS LLP

DuaneMorris

Peter A. Matthews
January 14, 2026
Page 2

before a notary and return; and (ii) sign and return this letter at the space indicated below (Option 1 below).  In addition, you may also choose to simply allow the rescission of the Loan Modification Agreement by signing and returning this letter, in which case, the Parties will be returned to their Pre-Loan Modification positions (Option 2 below).  If you do not comply with this request on or before January 22, 2026, Freedom Mortgage will have no choice but to seek appropriate relief from the Courts.

Please indicate your decision to rescind by signing the copy of this letter and returning it to me in the FedEx envelope provided.

Very truly yours,

Brett L. Messinger

**Option 1**

I have re-signed the Loan Modification Agreement and the replacement is enclosed with this letter.

_____
Peter A. Matthews

**Option 2**

I hereby agree that the Loan Modification Agreement that I signed on December 7, 2021 is rescinded, and the parties are returned to their Pre-Loan Modification positions.

_____
Peter A. Matthews

DM1\20359956.1

**After Recording Return To:**
Freedom Mortgage Corporation
Attn: Recording Department
10500 Kincaid Dr, Suite 300
Fishers, Indiana 46037

_____[Space Above This Line For Recording Data]_____

Loan No.: 0104651799
Investor Loan No.: 4014958627
MERS No.: 100059600003067100                                   MERS Phone: 1-888-679-6377

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 1st day of September, 2021, between PETER A MATTHEWS ("Borrower/Grantor") and Freedom Mortgage Corporation, whose address is 10500 Kincaid Drive, Suite 300, Fishers, Indiana 46037 ("Lender/Grantee"), and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated April 30th, 2018, granted or assigned to Mortgage Electronic Registration Systems, Inc. as beneficiary of record (solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-2026 and recorded on N/A , , in Mortgage Book N/A, Page N/A, Instrument No. N/A, Official Records of JEFFERSON County, Colorado, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in said Security Instrument and defined therein as the "Property," located at 7256 W 79TH DRIVE, ARVADA, Colorado 80003,

---

**COLORADO LOAN MODIFICATION AGREEMENT**                                   Page 1 of 7
**(FNMA Modified Form 3179 1/01 (rev. 06/18))**

Loan No.: 0104651799

the real property described being set forth as follows:
SEE EXHIBIT "A"  ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of October 1st, 2021, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $310,583.09, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.875%, from September 1st, 2021. Borrower promises to make monthly payments of principal and interest of U.S. $1,089.58, beginning on the 1st day of October, 2021, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 2.875% will remain in effect until principal and interest are paid in full. If on September 1st, 2061, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)      all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.: 0104651799

     5.     Borrower understands and agrees that:

     (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

     (b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

     (c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

     (d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

     (e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

     (f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower  information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's  loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

     Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

     By checking this box, Borrower also consents to being contacted by text messaging⬤.

     (g)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

     6.     If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

     7.     Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay

Loan No.: 0104651799

directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

_____(Seal)
Date                                                                    PETER A MATTHEWS                    –Borrower

_____(Seal)
Date                                                                                                        –Borrower

_____(Seal)
Date                                                                                                        –Borrower

_____(Seal)
Date                                                                                                        –Borrower

Loan No.: 0104651799

# BORROWER ACKNOWLEDGMENT

State of      _____ §
§
County of   _____ §

     On this_____day of _____ ,_____, before me, _____ *[name of notary],* a Notary Public in and for said state, personally appeared   PETER A MATTHEWS


*[name of person acknowledged],* known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

_____

Notary Signature


_____

Type or Print Name of Notary

Notary Public, State of_____

My Commission Expires:_____

Loan No.: 0104651799

_____    **-Date**

Freedom Mortgage Corporation_____
                                                 **-Lender**

By:  _____

Printed/Typed Name:_____

Its:  _____

## LENDER ACKNOWLEDGMENT

State of    Indiana        §
                                  §
County of  Hamilton        §

On this_____day of _____, _____, before me, _____*[name of notary],* a Notary Public in and for said state, personally appeared _____, _____ of Freedom Mortgage Corporation
                                            , Lender, personally known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)                                        _____

                                                  Notary Signature

                                        _____
                                        Type or Print Name of Notary

                                        Notary Public, State of_____

                                        My Commission Expires:_____

Loan No.: 0104651799

_____  **-**Date

Mortgage Electronic Registration Systems, Inc.
as nominee for Lender, its successors and     **-**MERS
assigns

By:   _____

Printed/Typed Name:_____

Its:  Assistant Secretary_____

## MERS ACKNOWLEDGMENT

State of     Indiana              §
                                          §
County of Hamilton              §

On this_____day of  _____, _____, before me, _____*[name of notary],* a Notary Public in and for said state, personally appeared _____  , Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as nominee for Lender, its successors and assigns, personally known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)                                                        _____
                                                                                        Notary Signature

                                                                _____
                                                                Type or Print Name of Notary

                                                                Notary Public, State of_____

                                                                My Commission Expires:_____

---

**ACKNOWLEDGMENT (COLORADO)**                                         **Page 7 of 7**

Loan No.:  0104651799

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:**  The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.


| | |
|---|---|
| PETER A MATTHEWS                    -Borrower | **-**Borrower |
| -Borrower | **-**Borrower |
| -Borrower | **-**Borrower |

Loan No.: 0104651799

# CORRECTION AGREEMENT

**Borrower(s):** PETER A MATTHEWS                    **Property:** 7256 W 79TH DRIVE, ARVADA, Colorado 80003

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is PETER A MATTHEWS.

**"Lender"** is Freedom Mortgage Corporation
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $310,583.09, which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

---

**CORRECTION AGREEMENT**                                                        Page 1 of 2

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

| | |
|---|---|
| PETER A MATTHEWS     -Borrower (Date) | -Borrower (Date) |
| -Borrower (Date) | -Borrower (Date) |
| -Borrower (Date) | -Borrower (Date) |

CORRECTION AGREEMENT

Loan No.: 0104651799

## ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

_____  10/30/24    _____
PETER A MATTHEWS    -Borrower (Date)    -Borrower (Date)


_____    _____
-Borrower (Date)    -Borrower (Date)


_____    _____
-Borrower (Date)    -Borrower (Date)


ATTORNEY SELECTION NOTICE -MULTISTATE    Page 1 of 1

# EXHIBIT A

**LOT 2, BLOCK 2, PARKWAY ESTATES FILING NO. 5, COUNTY OF JEFFERSON, STATE OF COLORADO.
APN #: 29-351-05-032**